IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ANNA ALMERICO, CHELSEA GAONA-LINCOLN, MICAELA AKASHA DE LOYOLA-CARKIN, and HANNAH SHARP,<br><br>        Plaintiffs,<br><br>    v.<br><br>LAWRENCE DENNEY, as Idaho Secretary of State in his official capacity, LAWRENCE WASDEN, as Idaho Attorney General in his official capacity, and DAVE JEPPESEN, as Director of the Idaho Department of Health and Welfare in his official capacity,<br>        Defendants. | Case No.  1:18-CV-239-BLW<br><br>**MEMORANDUM DECISION & ORDER** |

## INTRODUCTION

The Court has before it cross-motions for summary judgment.  The Court heard oral argument on February 26, 2021 and took the motions under advisement.  For the reasons explained below, the Court will grant in part both motions, holding that (1) the pregnancy exclusion contained in the form following Idaho Code § 39-4510(1) is not required to be contained in a woman's advance directive; and (2) the defendants' erroneous interpretation that the pregnancy exclusion was required to be in a woman's advance directive violated plaintiffs' First, Fifth, and Fourteenth Amendment rights.

**Memorandum Decision & Order – page 1**

## LITIGATION BACKGROUND

Plaintiffs are four women who challenge the constitutionality of a subsection of Idaho's Medical Consent and Natural Death Act, Idaho Code §§ 39-4501 through -4515. The Act provides a template or form for an advance directive, which contains a person's health care directives in the event they become incapacitated. *See* Idaho Code § 39-4510(1). The Act's advance directive form contains the following element that plaintiffs challenge: "If I have been diagnosed as pregnant, this Directive shall have no force during the course of my pregnancy."

The parties disagree about the effect of the challenged element in the Act's advance directive form. Plaintiffs contend that the Act requires the pregnancy exclusion while the defendants contend that the Act does not require any person to use the advance directive form or to include the challenged element in their directive; they also contend that the Act does not automatically invalidate a pregnant woman's directive.

The plaintiffs' original complaint brought a facial challenge to IC § 39-4510 under the Due Process and Equal Protection Clauses of the United States Constitution. Defendants responded with a motion to dismiss arguing that a facial challenge could only succeed if the plaintiffs showed that no set of circumstances exist under which the statute would be valid, a showing impossible to make. *See U.S. v. Salerno,* 481 U.S. 739 (1987). The Court agreed, holding that under some rare circumstances the statute would be valid, foreclosing a facial challenge under the *Salerno* test. *See Memorandum Decision (Dkt. No 33).* The Court did, however, give plaintiffs an opportunity to amend their complaint

to allege as-applied challenges under the Equal Protection and Due Process Clauses of the United States Constitution. *Id.*

The plaintiffs amended their complaint to add those as-applied challenges. They also added a claim that the pregnancy exclusion essentially compelled them to speak a message dictated by the Government, a violation of the First Amendment.

Both sides then filed motions for summary judgment based on a joint stipulation of facts. The Court will rely upon those stipulated facts in resolving the cross motions. *See Stipulation (Dkt. No. 58).*

## FACTS

Idaho's Medical Consent and Natural Death Act states that its "primary purposes" are to:

> (a) To provide and codify Idaho law concerning consent for the furnishing of hospital, medical, dental, surgical and other health care, treatment or procedures, and concerning what constitutes an informed consent for such health care, treatment or procedures; and
> (b) To provide certainty and clarity in the law of medical consent in the furtherance of high standards of health care and its ready availability in proper cases.

*See* Idaho Code § 39-4501. While the first several sections of the Act deal with consent to medical provisions generally, later sections specifically address end-of-life situations. The purpose of those provisions is set forth in Idaho Code § 39-4509(2) & (3):

> (2) In recognition of the dignity and privacy which persons have a right to expect, the legislature hereby declares that the laws of this state shall recognize the right of a competent person to have his or her wishes for medical treatment and for the withdrawal of artificial life-sustaining procedures carried out even though that person is no longer able to communicate with the health care provider.

**Memorandum Decision & Order – page 3**

> (3) It is the intent of the legislature to establish an effective means for such communication. It is not the intent of the legislature that the procedures described in sections 39-4509 through 39-4515, Idaho Code, are the only effective means of such communication, and nothing in sections 39-4509 through 39-4515, Idaho Code, shall impair or supersede any legal right or legal responsibility which a person may have to effect the withholding or withdrawal of life-sustaining procedures in any lawful manner, provided that this sentence shall not be construed to authorize any violation of section 39-4514(3), Idaho Code. Any authentic expression of a person's wishes with respect to health care should be honored.

The very next section, Idaho Code § 39-4510(1), states that any competent person may direct end-of-life care in a document entitled "Living Will and Durable Power of Attorney for Health Care" that "shall be in substantially the following form, or in another form that contains the elements set forth in this chapter."  The form that follows is entitled "A Living Will – A Directive to Withhold or Provide Treatment."  The form contains options for the user to choose a level of care ranging from withdrawing all medical care to providing all medical care.  Other provisions in the form do not offer options but are instead declarative sentences.  For example, paragraph 3 contains a statement that the signatory is "mentally competent" and will hold harmless any of the providers carrying forth her desires contained in the form.  A similar declarative sentence is contained in paragraph 2 – the pregnancy exclusion – stating as follows:  "If I have been diagnosed as pregnant, this Directive shall have no force during the course of my pregnancy."

The Act also creates a state-maintained health care directive registry.  *See* Idaho Code § 39-4515. The Act allows, but does not require, persons to register their advance directives in the state directory regardless of whether the directive conforms to the

**Memorandum Decision & Order – page 4**

statutory form in § 39-4510.  *See* Idaho Code §§ 39-4514(10); 39-4515(7).  The State does not review advance directives for compliance with the law at registration, and registration does not create a presumption that an advance directive is valid.  *See* Idaho Code § 39-4515(4).  All four Plaintiffs have executed advance directives that do not include the pregnancy exclusion language contained in the form following § 4510(1).

**The Plaintiffs**

Plaintiffs Anna Almerico, Mikaela de Loyola-Carkin, Chelsea Gaona-Lincoln, and Hannah Sharp are all Idaho women of childbearing age who have been pregnant and have children. Ms. Gaona-Lincoln and Ms. Sharp were pregnant and gave birth to children during this litigation.

Each plaintiff created an advance directive determining the treatment she would consent to or not consent to if she were to become incapacitated. All of the plaintiffs want these decisions to be respected regardless of whether they are pregnant, so they did not include the Pregnancy Exclusion in their directives.  Ms. Almerico's and Ms. Sharp's directives state that, if they were pregnant and the fetus is at or past the point of viability, they want and consent to life-sustaining treatment.  All plaintiffs made their advance directives to ensure that their end-of-life medical treatment aligns with their values and beliefs.  They also designated health care agents to effectuate these decisions. Plaintiffs memorialized their health care decisions in advance directives because they want those decisions to be honored, regardless of their pregnancy status.

Three of the four plaintiffs (Ms. Almerico, Ms. Gaona-Lincoln, and Ms. de Loyola-Carkin) have registered their directives in the state registry.  Plaintiff Sharp

**Memorandum Decision & Order – page 5**

believes she submitted her directive for registration but the Secretary of State has no record of receiving a directive from Ms. Sharp.

**The Website**

Since 2005 and until after this litigation was filed, defendants' websites contained information on advance directives and included the following in a section addressing frequently asked questions (FAQ) and the State's answers to those questions: "What if I am pregnant when I become incapacitated? Life sustaining measures will continue regardless of any directive to the contrary until the pregnancy is complete."

The FAQ was originally created by the Idaho Attorney General's office in 2005, shortly after the Act became law. This lawsuit, filed in 2018, caused defendants to evaluate the accuracy of the FAQ. All defendants now state that the FAQ does not accurately reflect the Act's effect on pregnant women's directives. All defendants now interpret the Act (1) as not requiring any person to use the statutory template – that is, the form following § 4510(1) – or to include the statutory template's challenged language regarding pregnancy in their directive; and (2) as not requiring an incapacitated pregnant person to receive life-sustaining treatment if such treatment is contrary to her directive.

All defendants have removed the FAQ from their websites. However, the form or template including the pregnancy exclusion is still contained on the Secretary of State's website. There is no accompanying explanation that the pregnancy exclusion is not a required element of any directive as the defendants now concede.

## ANALYSIS

**Standing/Mootness**

For the plaintiffs' claims to be justiciable under the "case or controversy" requirement of Article III, they must have standing to bring the claim, and the claim must not be moot. *Jacobs v. Clark County,* 526 F.3d 419, 425 (9th Cir.2008). To satisfy Article III standing, plaintiffs must show they suffered (1) an injury-in-fact that (2) is fairly traceable to the challenged conduct and (3) will likely be redressed by a favorable judicial decision. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).

The Court turns first to the injury requirement for standing. Intangible injuries can be injuries sufficient to satisfy this test. *Id.* at 1549. In a case where plaintiffs claimed that the state interfered with their liberty interest in making end-of-life decisions for a comatose woman, the Supreme Court proceeded directly to the merits of the constitutional claims, apparently assuming that plaintiffs had standing. *Cruzan v. Director, Mo. Dept. of Health*, 497 U.S. 261 (1990). But if a woman is not comatose and is instead attempting ahead-of-time to avoid a *Cruzan*-type tragedy by challenging a pregnancy exclusion requirement, courts have found a lack of standing. For example, in *Gabrynowicz v. Heitkamp*, 904 F. Supp. 1061 (D.N.D. 1995), the court reasoned that because the woman was not pregnant or terminally ill when the lawsuit was brought, there was no "realistic danger" that the pregnancy exclusion requirement would directly injure the woman, rendering her claims "abstract" and "non-justiciable." *Id.* at 1063-64; *see also DiNino v. State ex rel. Corton*, 684 P.2d 1297 (Wash. 1984) (holding that a healthy non-pregnant woman had no standing to challenge the pregnancy exclusion).

**Memorandum Decision & Order – page 7**

These cases are distinguishable in that two of the plaintiffs here were pregnant when this lawsuit was filed. But more importantly, the Court disagrees with the analysis in both cases. Women are injured for standing purposes when they draft a directive without a pregnancy exclusion because they face an immediate credible threat that their directives will be ignored and that they will receive end-of-life medical treatment to which they did not consent. Plaintiffs need not "await the consummation of threatened injury to obtain preventive relief." *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1154 (9th Cir. 2000). A credible threat of harm is sufficient to constitute an injury-in-fact. *Harris v. Bd. of Supervisors, Los Angeles County,* 366 F.3d 754, 761 (9th Cir. 2004). And because standing is determined based on the facts "as they exist[ed] at the time the complaint was filed," the issue is whether the FAQ – which was on the defendants' websites when this lawsuit was filed – constituted a credible threat to plaintiffs. *See Jacobs v. Clark County School Dist.,* 526 F.3d 419, 425 (9th Cir. 2008).

To find a credible threat here, one need look no further than the *DiNino* case, cited by defendants. There, the woman's physician refused to accept her directive because it failed to contain the required pregnancy exclusion and directed that life support be withdrawn regardless of pregnancy; the physician feared being sued if he carried out the directive's commands. *DiNino.* 684 P.2d at 1299. The physician's response was reasonable and undoubtedly typical – it was not a rare hypersensitive reaction. Of course, that was simply a case involving acceptance of the directive. Is there really a *credible* threat of a hospital ignoring objections and forcing a comatose pregnant woman onto life support to buy time to deliver her baby? That is exactly what happened in *Muñoz v. John*

**Memorandum Decision & Order – page 8**

*Peter Smith Hospital,* No. 096-270080-14, (9th Jud. District Tex. Jan. 24, 2014) (as discussed in Flanagan, *Decisions in the Dark: Why Pregnancy Exclusions are Unconstitutional,* 114 NWULR 969, 970 (2020)).

The plaintiffs' fears are not spun out of thin air, neither can they be described as "abstract" or "hypothetical." They are instead a response to a credible threat. The Court finds that plaintiffs have established that at the time this lawsuit was filed they faced a credible threat that could be traced to defendants and that could be redressed by a favorable decision. That is sufficient for standing.

Defendants respond that even if standing existed when the lawsuit was filed, the controversy was mooted when they removed the FAQ from their websites. But simply removing the FAQ, without expressing that it was wrong, only mitigates slightly the threat to plaintiffs that their directives will be ignored – it does not remove the threat. The FAQ existed for 15 years and was only removed after this lawsuit was filed. As plaintiffs point out in their reply brief, the State's wrong interpretation was widely acknowledged as being the law in Idaho.[1] Given its long existence, and the absence of

---

[1] Plaintiffs cite several sources in their briefing. *See Reply Brief (Dkt.No. 68)* at p. 3: "*See*, e.g., Elizabeth Villarreal, Pregnancy and Living Wills: <u>A Behavioral Economics Analysis</u>, 128 Yale L.J. Forum 1052, 1062 (2019) (listing Idaho as a state in which "living wills are invalid for the duration of the pregnancy"); *See also*, Kristeena L. Johnson, Note, <u>Forcing Life on the Dead: Why the Pregnancy Exemption Clause of the Kentucky Living Will Directive Act is Unconstitutional,</u> 100 Ky. L.J. 209, 211 (2011) (citing Idaho as one of twelve states that "completely stay the effectiveness of a living will or directive in the instance of a pregnant woman"); Shea Flanagan, Note, <u>Decisions in the Dark: Why "Pregnancy Exclusion" Statutes are Unconstitutional and Unethical,</u> 114 Nw. U. L. Rev. 969, 1013 (2020) (categorizing Idaho as a state in which an advance directive is void per se if the individual is pregnant); Hannah Schwager, Note, <u>The Implications of Exclusion: How Pregnancy Exclusions Deny Women Constitutional Rights,</u> 13 Cardozo Pub. L. Pol'y & Ethics J. 595, 601-602 (2015) (citing Idaho as belonging to the category of states with the most restrictive pregnancy exclusions in their advance directive statutes); *see also* 3 Honoring Choices Idaho, an initiative supported by the Idaho Department of Health and Welfare, provides resources about (Continued)

**Memorandum Decision & Order – page 9**

any affirmative correction, the FAQ becomes "common knowledge" and lives on despite its removal. The declaratory judgment plaintiffs seek could counter and correct years of erroneous interpretation. The Court therefore rejects the argument that this action has been mooted by the removal of the FAQ.

**Applicability of *Ex parte Young***

Defendants argue that this Court lacks jurisdiction over them under the doctrine of *Ex parte Young*, 209 U.S. 123, 157 (1908), which requires "some connection" between a named state officer and enforcement of a challenged state law. The defendants claim that there is no connection between them and the pregnancy exception because "no defendant can change the statutory language plaintiffs dislike." *See Defense Brief (Dkt. No. 59-1)* at p. 8.

However, during oral argument, defense counsel candidly pointed out that defendant Department of Health & Welfare (DHW) has the authority to implement all portions of the Act – which would include the pregnancy exception – pursuant to Idaho Code § 39-4514(11). *See Transcript (Dkt. No. 70)* at p. 30. DHW also has wide authority to enforce the Act under another statutory provision. *See* I.C. § 56-1006(3)(j). Moreover, it is undisputed that defendant Attorney General has the power to enforce the Act. That office represents all state agencies and is to advise on issues of law and can step into the shoes of the county attorney. *See* Idaho Code § 67-1401. This power to

---

advance care planning. Honoring Choices Idaho includes a Fillable Living Will form on its website which departs in format from the Model Form. On the form, near the signature line, the following language is included: "I understand this document cannot be honored if I am pregnant."

enforce was enough in *Planned Parenthood of Idaho v. Wasden,* 376 F.3d 908 (9th Cir. 2004) to overcome *Ex parte Young* objections:

> [T]he attorney general may in effect deputize himself (or be deputized by the governor) to stand in the role of a county prosecutor, and in that role exercise the same power to enforce the statute the prosecutor would have. That power demonstrates the requisite causal connection for standing purposes. An injunction against the attorney general could redress plaintiffs' alleged injuries . . . .

*Id.* at 920. The reasoning applies with equal strength to the DHW. And the form at issue containing the pregnancy exclusion is currently on the website of the Secretary of State rendering that defendant also amenable to the jurisdiction of this Court.

**Interpretation of the Statute**

The Court will turn next to an interpretation of the Act. The issue boils down to whether the Act's language (1) requires the pregnancy exclusion; (2) makes optional the pregnancy exclusion; or (3) is ambiguous as to whether the pregnancy exclusion is required or optional.

The opening section – § 4509 – makes clear that the form following § 4510(1) containing the pregnancy exclusion is only a suggested format and not the exclusive format for a directive: "It is not the intent of the legislature that the procedures described in [§ 4509 to § 4515] are the only effective means" of communicating a person's wishes for end-of-life care. *See* Idaho Code § 39-4509(3). It goes on to state that "nothing in [these sections] shall impair or supersede any legal right . . . to effect the withholding or withdrawal of life-sustaining procedures . . . ." *Id.* Indeed, "[a]ny authentic expression of a person's wishes with respect to health care should be honored." *Id.* The definition of

**Memorandum Decision & Order – page 11**

an "advance directive" in Idaho Code § 39-4502(8) also signals that no specific language will be required to validate a directive: "An . . . advance directive . . . is a document that substantially meets the requirements of section 39-4510(1) . . . or is another document which represents a competent person's authentic expression of such person's wishes concerning his or her health care." Finally, the same liberal interpretation is given to directives that predate the Act or were prepared in other states: "This section shall be liberally construed to give the effect to any authentic expression of the person's prior wishes or directives concerning his or her health care." *See* Idaho Code § 39-4514(7).

Under this language of § 4509, the only required elements for a directive are competency and authenticity. The woman preparing the directive must be competent and her directive must be an authentic expression of her wishes. That section requires no specific language and demands the inclusion of no specific clauses; it gives strong support to defendants' current, but belated, interpretation that a woman's directive without a pregnancy exclusion is not invalid for that reason.

The next section – §4510(1) – does nothing to change this interpretation. It states that "any competent person" can execute a directive that "shall be in substantially the following form, [containing the pregnancy exception] or in another form that *contains the elements set forth in this chapter*." (emphasis added). What are those elements? They are the competency and authenticity elements just discussed, set forth in §4509 – nothing more. The use of the disjunctive "or" means that the form language is optional and does not establish the exclusive format for a valid directive.

The Court therefore finds, as a matter of law, that the language of the Act is clear and unambiguous that a directive need not include a pregnancy exclusion to be valid. But this does not end the inquiry. For fifteen years, the defendants promoted on their websites their interpretation that the pregnancy exclusion was required and that any directive to the contrary would be ignored. The defendants are essentially the State of Idaho for all practical purposes. Although their interpretation was wrong, it had the weight of the State behind it. The State did not withdraw its promotion of that interpretation until after this lawsuit was filed and has still not affirmatively explained that its interpretation was wrong. Indeed, as discussed above, this wrong interpretation was widely accepted as the law in Idaho and the length of that error ensures that it enters the realm of common knowledge and lives on despite its removal from the websites. Despite the clear language of the Act, the State's public promotion for fifteen years of its interpretation that the pregnancy exclusion was required renders the Act vague and ambiguous under these circumstances.

**Constitutional Analysis**

Given the ambiguity just identified, there is a credible threat that health care providers and others will refuse to accept an incapacitated woman's advance directive because it fails to include the pregnancy exclusion. Thus, the Court must proceed to the merits of the claim that requiring a pregnancy exclusion in a woman's advance directive is unconstitutional.

Under the pregnancy exclusion, a pregnant woman about to die, whose advance directive dictated the withdrawal of all life support, would nevertheless have life support

**Memorandum Decision & Order – page 13**

forced upon her until her baby could be delivered. This violates the constitutional right of a competent person to refuse unwanted lifesaving medical treatment. *Cruzan,* 497 U.S. at 269. In that case, the Supreme Court decided that a competent person has a constitutionally protected liberty interest in making their own health care decisions, including refusing unwanted lifesaving medical treatment. *Id.* at 279 (stating that "for the purposes of this case, we assume that the United States Constitution would grant a competent person a constitutionally protected right to refuse lifesaving hydration and nutrition"). In her concurring opinion, Justice O'Connor stated that

> [r]equiring a competent adult to endure such procedures against her will burdens the patient's liberty, dignity, and freedom to determine the course of her own treatment. Accordingly, the liberty guaranteed by the Due Process Clause must protect, if it protects anything, an individual's deeply personal decision to reject medical treatment, including the artificial delivery of food and water.

*Id.* at 289 (O'Connor, J. in concurrence). Women do not lose these rights because they are pregnant when they fall into a coma: "Courts do not compel one person to permit a significant intrusion upon his or her bodily integrity for the benefit of another person's health." *In re A.C.,* 573 A.2d 1235, 1243-44 (D.C.Ct.App. 1990).[2] Certainly the state

---

[2] This blanket statement may not be universally true under all circumstances. For example, consider a case where a pregnant woman past her due date falls into a persistent vegetative state after an accident. *See* Flanagan, *Decisions in the Dark, supra* at n. 184. In this exceptional circumstance, would a state be justified in removing a full-term fetus through a cesarean section procedure immediately prior to removing the mother's life-support? Is that the exceptional circumstance when a state's interest in potential human life overrides a woman's right to refuse lifesaving medical treatment? *See* Elizabeth A. Marcuccio & Joseph P. McCollum, *Advance Directives Containing Pregnancy Exclusions: Are They Constitutional?*, 34 N.E. J. L. STUD. 22, 34-35 (2015) (noting that the fundamental right to refuse unwanted medical treatment is not absolute and can potentially be less compelling than the state's interest in potential human life). These are difficult questions that do not need to be answered in this decision and the Court expresses no opinion thereon.

**Memorandum Decision & Order – page 14**

has an interest in ensuring that a woman carries her fetus to term.  *See Planned Parenthood v. Casey*, 505 U.S. 833 (1992).  But *Casey* and its progeny only *limit* the choices of women who seek to terminate a pregnancy, while Idaho's pregnancy exclusion *completely denies* the choices of women, regardless of the viability of the fetus, and forces medical treatment on them.  Moreover, those who seek to enforce "a pregnant woman's advance directive are not seeking an abortion of the fetus, but rather are seeking the proper administration of that woman's choice of her own end-of-life care."  Flanagan, *supra* at 988.  While abortion restrictions "stop women from getting the health care that they want or need, pregnancy exceptions forcibly subject women to health care that they neither require nor desire."  Nikolas Youngsmith, *The Muddled Milieu of Pregnancy Exceptions and Abortion Restrictions*, 49 Columbia Human Rights Law Review 415, 419 (2018).  For this reason, pregnancy exclusion laws "represent an unprecedented and extraordinary step beyond abortion restrictions."  Flanagan, *supra,* at 989.  Because the Idaho pregnancy exclusion goes far beyond *Casey,* the abortion line of cases cannot save it.

      The pregnancy exclusion also violates the First Amendment, which prevents the Government from compelling individuals to express certain views, just as it prohibits impermissible Government censorship of speech.  *U.S v. United Foods, Inc.*, 533 U.S. 405, 410 (2001).  Content-based speech restrictions that "target speech based on its communicative content" are presumed to be unconstitutional and are only acceptable if narrowly tailored in pursuit of a compelling interest.  *Nat'l Inst. of Family & Life Advocates v. Becerra*, 138 S. Ct. 2361, 2365 (2018).  There is nothing "narrowly

**Memorandum Decision & Order – page 15**

tailored" about the pregnancy exclusion here. It compels women to express the State's message in their directive and hence violates the First Amendment. The ambiguity discussed above caused by the State's long-held wrong interpretation created a chill on protected expression – confronted with it, a woman would likely either include the Government's message (the pregnancy exclusion) or decline to express her own contrary message. The pregnancy exclusion violates the First Amendment.

**Conclusion**

In conclusion, the Court finds that (1) the Act itself does not require advance directives to contain the pregnancy exclusion; (2) the defendants' FAQ created an ambiguity by asserting for 15 years that if a pregnant woman became incapacitated and her advance directive did not include the pregnancy exclusion, her directive would be ignored; (3) while the defendants removed that FAQ after this lawsuit was filed they have never affirmatively corrected their wrong interpretation (beyond their stipulations in this lawsuit); and (4) the defendants' interpretation that the pregnancy exclusion must be contained in a woman's advance directive to make it valid violated the First, Fifth, and Fourteenth Amendments.

These findings lead to two remedial measures. First, the Court will grant in part plaintiffs' motion for summary judgment to the extent it seeks a declaratory judgment that the pregnancy exclusion – as interpreted by the defendants for 15 years – violates plaintiffs' constitutional rights. Second, the Court will grant in part the defendants' motion for summary judgment to the extent it seeks a ruling that the Act does not require the pregnancy exclusion language in a woman's advance directive, and that the

**Memorandum Decision & Order – page 16**

defendants' own 15 year-long interpretation to the contrary was in error. The summary judgment motions of both parties will be denied in all other respects. Because these rulings resolve all issues, the Court will enter a separate Judgment.

**ORDER**

In accordance with the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that the motion for summary judgment filed by plaintiffs (docket no. 62) is GRANTED IN PART AND DENIED IN PART. It is granted to the extent it seeks a declaratory judgment that requiring an incapacitated woman's advance directive to contain a pregnancy exclusion (as set forth in the form following Idaho Code § 39-4510(1)) is a violation of a woman's First, Fifth, and Fourteenth Amendment rights. Their motion for summary judgment is denied in all other respects.

IT IS FURTHER ORDERED, that the motion for summary judgment filed by defendants (docket no. 59) is GRANTED IN PART AND DENIED IN PART. It is granted to the extent it seeks a ruling that Idaho's Medical Consent and Natural Death Act does not require the pregnancy exclusion (as set forth in the form following Idaho Code § 39-4510(1)) to be contained in a woman's advance directive. Their motion for summary judgment is denied in all other respects.

DATED: April 5, 2021

_____
B. Lynn Winmill
U.S. District Court Judge